1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

7

EASTERN DISTRICT OF CALIFORNIA

8

9    ADELAIDO A. JACINTO,                     CASE NO. 1:11-cv-01114-SMS

10                          Plaintiff,

11        v.                                  ORDER AFFIRMING IN PART AND
                                              REVERSING IN PART THE AGENCY'S
                                              DENIAL OF BENEFITS AND DIRECTING
12   MICHAEL J. ASTRUE,                       ENTRY OF JUDGMENT
     Commissioner of Social Security,

13
                            Defendant.
14   _____/

15

16        Plaintiff Adelaido Jacinto, by his attorneys, Law Offices of Lawrence D. Rohlfing, seeks

17   judicial review of a final decision of the Commissioner of Social Security ("Commissioner")

18   denying his application for disability insurance benefits under Title II, and Supplemental Security

19   Income (SSI) under Title XVI, of the Social Security Act (42 U.S.C. § 301 *et seq.)* (the "Act").

20   The matter is currently before the Court on the parties' cross-briefs, which were submitted,

21   without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.

22   Following a review of the complete record and applicable law, this Court affirms the

23   Commissioner's decision for the time period from July 25, 2008, through December 15, 2010,

24   and reverses the Commissioner's decision for the time period beginning December 16, 2010.

     **I.    Administrative Record**
25
          **A.    Procedural History**
26
          On January 25, 2006, Plaintiff applied for disability benefits pursuant to Title II of the
27
     Social Security Act, alleging disability beginning September 21, 2005.  His claims were initially
28

1

1    denied on June 29, 2006, and upon reconsideration, on January 25, 2007.  On February 28, 2007,

2    Plaintiff filed a timely request for a hearing.  Plaintiff appeared and testified at a hearing on May

3    13, 2008.  On July 24, 2008, Administrative Law Judge Michael J. Haubner denied Plaintiff's

4    application.  The Appeals Council denied review on May 24, 2010.  On August 10, 2010,

5    Plaintiff filed a complaint seeking District Court review.  *Jacinto v. Astrue*, Doc. 1 (E.D.Cal.)

6    (No. 1:10-cv-01475-SMS).  The District Court affirmed the Commissioner's decision on October

7    21, 2011.  *Jacinto v. Astrue*, Doc. 16 (E.D.Cal. October 21, 2011) (No. 1:10-cv-01475-SMS).

8            Meanwhile, on September 3, 2006, Plaintiff again applied for disability benefits pursuant

9    to Title II of the Social Security Act, alleging disability beginning July 25, 2008.  On September

10   15, 2008, he added a claim for Supplemental Security Income (SSI), also alleging disability

11   beginning July 25, 2008.  His claims were initially denied on January 14, 2009, and upon

12   reconsideration, on April 20, 2009.  On June 1, 2009, Plaintiff filed a timely request for a

13   hearing.  Plaintiff appeared and testified at a hearing on October 7, 2010.  On October 25, 2010,

14   Administrative Law Judge Christopher Larsen denied Plaintiff's application.  The Appeals

15   Council denied review on May 31, 2011.  On July 5, 2011, Plaintiff filed a complaint seeking

16   District Court review.

17           **B.      The Agency Record**

18       **Plaintiff's testimony.**  Plaintiff (born December 16, 1960) attended school in Mexico

19   through the second grade.  He had been a field worker for twenty-five years when he had open

20   heart surgery in 2005.  Thereafter, his incision became infected, and he did not return to work.

21   He had knee surgery in 2006 and shoulder surgery in 2010.  He was always in pain in his chest,

22   knees, and back.  At the hearing, Plaintiff's left arm was supported by a sling following rotator

23   cuff surgery.  He walked with a cane.

24           Plaintiff lived with his wife and his father-in-law.  On a typical day, he awoke at about

25   6:00 a.m.  When he was not recovering from shoulder surgery, he was able to perform his own

26   personal care and dress himself.  He could fix simple meals.  When he was able, he helped with

27   household chores, such as dusting and laundry.  Outside, he watered plants or trimmed dry leaves.

28   ///

1    Plaintiff watched television about three hours a day.  He visited his mother, who lived nearby,

2    once a week.

3           Plaintiff estimated that he could stand for an hour before needing to sit.  He could sit for

4    twenty or thirty minutes.  He could lift about ten pounds.  Plaintiff was five feet, seven inches tall,

5    and weighted 226 pounds.  (Plaintiff had gained about 25 pounds due to inactivity following his

6    recent shoulder surgery.)

7           **Wife's testimony.**  Josie Jacinto had been married to Plaintiff for sixteen years.  She

8    testified that now, he was always in pain.  He sometimes became light-headed.  She had been

9    helping Plaintiff dress since he had open heart surgery in 2005.  He became easily frustrated and

10   irritable with himself and others when he attempted to perform household tasks and experienced

11   pain in his back, arms, or knees.  He often volunteered to perform gardening, sweeping, or

12   vacuuming even though his frequent rests meant the task took a long time.  Mrs. Jacinto would

13   prefer that Plaintiff rest and let her perform the household tasks, particularly since she feared that

14   he would become lightheaded, fall, and hurt himself.

15          **Exertion questionnaire.**  Plaintiff submitted an exertion questionnaire on a form

16   apparently prepared by his attorney.  He reported constant pain, nausea, fatigue, and shortness of

17   breath.  Although he was able to drive his automatic car, he only did so when he wife could not

18   arrange to drive for him.  Although he could sit and water the garden, he could no longer cut or

19   edge the lawn nor prune plants.  His medications included Warfarin (blood thinner), Lipitor

20   (cholesterol), Diovan (blood pressure), aspirin (blood thinner), Gabapentin (pain), Lovaza

21   (cholesterol), Celebrex (pain), fibercon (constipation), Hydrochlorothiazide (taken with Diovan),

22   Lexapro (depression), and Nitroquick (as needed for chest pain).

23          **Medical records.**  Doctors' reports indicated that Plaintiff's weight ranged from 238 to

24   267 pounds.

25          Plaintiff was examined at Bautista Medical Group on August 13, 2007, and August 19,

26   2008.  (On another occasion, Plaintiff left before seeing the doctor.)  The medical notes

27   documented Plaintiff's complaints of chest pain, knee pain, shoulder pain, low back pain, and

28   high blood pressure.

1   In September 2008, University Medical Center began to provide follow-up care for

2   Plaintiff's aortic valve replacement.  Doctors there also regularly monitored his blood since he

3   was taking anticoagulants.  At the initial appointment, Plaintiff complained of fatigue, shortness

4   of breath, and chest pain radiating to his jaw and arm.

5   Interpretation of an electrocardiogram administered on October 1, 2008, was technically

6   limited by Plaintiff's obesity.  Cardiologist Ralph J. Wessel, M.D., concluded:

7   The left ventricular chamber size is normal.
    Mild concentric left ventricular hypertrophy is observed.
8   There is normal left ventricular systolic function.
    The estimated ejection fraction is 55-60 %.
9   The left atrium is mildly dilated.
    The mechanical aortic valve appears well seated with normal function.

10  AR 217.

11  Wessel reached the same conclusions following a repeat echocardiogram on June 15,

12  2010.

13  A myocardial infusion study, performed November 3, 2008, showed no evidence of a prior

14  infarction or significantly reduced coronary artery perfusion reserve.  At 65 percent, the left

15  ventricular ejection fraction was within normal limits.  No wall motion abnormality was

16  identified.  A stress test performed the same day was negative for both ischemia and angina.

17  **Dr. Damania's opinion.**  On November 4, 2008, internist Rustom F. Damania, M.D.,

18  examined Plaintiff as an agency consultant.  Plaintiff complained of chest wall pain since his

19  valve replacement, chest pains on two occasions in the past two weeks, pain in the right knee and

20  left shoulder, hypertension, and hyperlipidemia.  Plaintiff denied any psychiatric history.  He

21  walked with a cane.

22  The examination was generally unremarkable.  Plaintiff's range of motion was within

23  normal limits in all respects except for limited motion in his left shoulder.  He displayed slight

24  tenderness of his left shoulder and chest wall.  Motor strength was 5/5 in all upper and lower

25  extremities.

26  Dr. Damania summarized:

27  The patient is a 47-year-old male.  The patient should be able to lift and carry 20

28  pounds occasionally and 10 pounds frequently.  The patient should be able to stand

4

1    and walk six hours out of a normal eight hour workday with appropriate breaks.
     The patient should be able to sit six hours.  There was no objective evidence found
2    to justify the need for an assistive device.  No postural limitations to bending
     stooping, crouching or kneeling.  No manipulative limitations, however, he would
3    have difficulty reaching above the level of the left shoulder on the left side.  Please
     correlate with x-rays and MRI's which were done in the past.  No relevant visual or
4    communicative impairments.

5    AR 227.

6    **Dr. Fast's opinion.**  Agency physician R. Fast, M.D., prepared a residual functional

7    capacity assessment on November 20, 2008.  Based on the consultant's examination, Fast opined

8    that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; could stand or walk

9    about six hours in an eight-hour work day; had limited ability to push and pull with his lower

10   extremities; could occasionally climb, balance, stoop, kneel, crouch, and crawl.  He had no visual,

11   communicative, or manipulative limitations.  Plaintiff generally could have unlimited exposure to

12   environmental factors except that he should avoid concentrated exposure to hazards such as

13   machinery and heights.

14   **Dr. Michiel's evaluation.**  On December 27, 2008, psychiatrist Ekram Michiel, M.D.,

15   prepared a psychiatric evaluation of Plaintiff.  Plaintiff told Michiel that he felt depressed due to

16   pain since his valve replacement surgery.  He had no prior psychiatric hospitalization or mental

17   health treatment: his primary care physician prescribed an antidepressant.  Dr. Michiel opined:

18       Based upon the evaluation and observation throughout the interview, I believe that
         the claimant is able to maintain attention and concentration and to carry out simple
19       job instructions,

20       The claimant is able to relate and interact with coworkers, supervisors and the
         general public.
21
         The claimant is unable to carry out an extensive variety of technical and/or
22       complex instructions.

23   AR 241.

24   **Opinion of Dr. Foster-Valdez.**  On January 13, 2009, Jaine Foster-Valdez, M.D.,

25   performed the psychiatric review technique.  She opined that Plaintiff had an affective disorder,

26   depression, that was not severe.  Dr. Foster-Valdez opined that Plaintiff had mild restriction of

27   activities or daily living, and mild difficulties in maintaining concentration, persistence, or pace,

28   but no difficulties maintaining social functioning and no episodes of decompensation.  She

1 concluded that Plaintiff's psychiatric allegations were not fully credible and that the evidence as a

2 whole did not support a conclusion that Plaintiff experienced significant work-related limitations

3 as a result of depression.

4          **Dr. Lee's opinion.**  On September 23, 2010, internist Chris Lee opined that, because of

5 neck and shoulder pain resulting from his torn rotator cuff,  Plaintiff was unable to perform full

6 time work at any level of exertion and had been unable to do so since 2005.  Nonetheless, Lee

7 opined that no limit applied to Plaintiff's ability to sit, stand, or walk at one time.  In an eight-hour

8 work day, Plaintiff was able to sit for eight hours and stand or walk for four hours.

9          **Vocational expert testimony.**  Jose Chaparro testified as vocational expert.  He

10 characterized Plaintiff's former work as a farm machine operator, which is heavy and semi-skilled

11 with SVP-3.  The job was medium work as Plaintiff performed it.

12          For the first hypothetical question, the ALJ directed Chaparro to assume a worker of

13 Plaintiff's age, education, and work experience, who could perform light physical exertion as

14 defined in the regulations, but could only occasionally climb, balance, stoop, kneel, crouch, and

15 crawl.  The worker must avoid concentrated exposure to hazards. He could occasionally reach

16 overhead with his nondominant arm and could occasionally push or pull with his lower

17 extremities.  Chaparro opined that the hypothetical worker could not perform Plaintiff's prior job.

18 The worker could perform the work of a household cleaner (DOT 323.687-014; light; unskilled)

19 with 237,000 jobs nationally and 25,000 jobs in California; ham rolling machine operator (DOT

20 529.685-138; light; unskilled) with 20,000 jobs nationally and 2600 jobs in California; and paper

21 pattern folder (DOT 794.687-034; light; unskilled) with 11,700 jobs nationally and 1600 jobs in

22 California.

23          For the second hypothetical question, the ALJ directed Chaparro to assume a second

24 worker of Plaintiff's age, education, and work experience, who could stand and walk two hours,

25 and sit three to four hours, in an eight-hour work day, but would require time to lie down and rest

26 for two to three hours per day.  Chaparro opined that no jobs would be available for such a

27 worker.

28 ///

1   Plaintiff's attorney then directed Chaparro to consider the worker in the first hypothetical,

2   but with the ability to occasionally push and pull with his left arm, and who spoke only Spanish.

3   Chaparro opined that such a person could still perform the jobs noted for the individual in the first

4   hypothetical question.

5   The attorney then directed Chaparro to assume that the person in her prior question also

6   needed take unscheduled breaks throughout the day to elevate his legs.  Chaparro opined that no

7   jobs would be available for such a person.

8   **II.   Legal Standards**

9   To qualify for benefits, a claimant must establish that he or she is unable to engage in

10  substantial gainful activity because of a medically determinable physical or mental impairment

11  which has lasted or can be expected to last for a continuous period of not less than twelve months.

12  42 U.S.C. § 1382c (a)(3)(A).  A claimant must demonstrate a physical or mental impairment of

13  such severity that he or she is not only unable to do his or her previous work, but cannot,

14  considering age, education, and work experience, engage in any other substantial gainful work

15  existing in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

16  To encourage uniformity in decision making, the Commissioner has promulgated

17  regulations prescribing a five-step sequential process for evaluating an alleged disability.  20

18  C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  The process requires consideration of the following

19  questions:

20  | Step one: | Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two. |

21

22  | Step two: | Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate. |

23  | Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four. |

24

25  | Step four: | Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five. |

26

27  ///

28  ///

7

Step five:       Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

In addition, when an applicant has one or more previous denials of applications for disability benefits, he or she must overcome a presumption of nondisability.  The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court.  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988).  Social Security Acquiescence Ruling ("SSR") 96-4(9), adopting *Chavez*, applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled.  A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjudicated period.  *Lester*, 81 F.3d at 827.  The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's residual functional capacity, age, education, or work experience.  *Id.* at 827-28; *Chavez*, 844 F.2d at 693.

In the prior action, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 21, 2005.  His severe impairments included history of minimally invasive aortic valve replacement, history of right medial and lateral meniscus tear, obesity, and a small tear of the left shoulder rotator cuff.  His impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  He was unable to perform any past relevant work.  Plaintiff had the residual functional ability to perform a wide range of light work.  The ALJ concluded that Plaintiff was not disabled from the alleged onset date to the date of the decision.

The sole issue in Plaintiff's prior appeal to the District Court was whether the ALJ erred in failing to consider a physician's opinion that Plaintiff, who took anti-coagulent medicine, should avoid working in proximity to sharp objects. Finding that the ALJ's determination was reasonable

///

8

1 and supported by substantial evidence, the District Court affirmed the Commissioner's denial of

2 disability insurance benefits.

3      The agency determined that Plaintiff's second application was not subject to *Chavez* due

4 to Plaintiff's allegation of a psychiatric impairment.

5      In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity

6 since July 25, 2008.  His severe impairments included status post aortic valve replacement, tears

7 of the medial and lateral menisci of the right knee, left rotator cuff tear status post acriomioplasty

8 and surgical repair, and obesity.  His impairments did not meet or medically equal one of the

9 listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Plaintiff could not perform his

10 past relevant work.

11      The ALJ determined that Plaintiff had the residual functional capacity to lift and carry

12 twenty pounds occasionally and ten pounds frequently; to stand, walk, or sit for six hours in an

13 eight-hour work day; to occasionally climb, balance, stoop, kneel, crouch, and crawl; to

14 occasionally reach overhead with his non-dominant left arm; and to occasionally push or pull with

15 his lower extremities.  He applied the Medical-Vocational Guidelines (commonly known as "the

16 Grids") and found that Plaintiff's age had advanced from that of a younger individual aged 18 to

17 49 years to that of an individual closely approaching advanced age (50 to 54 years).  Because

18 Plaintiff could not communicate in English, the ALJ classified him as illiterate in English.

19 Finally, the ALJ found that transferability of skills was not a relevant consideration since the

20 Grids indicated that Plaintiff was not disabled whether or not he had transferable skills.  Because

21 Plaintiff could not perform the full range of light employment, the ALJ relied on the vocational

22 expert's testimony and concluded that Plaintiff was capable of performing jobs that exist in

23 significant numbers in the national economy.  Accordingly, he concluded that Plaintiff was not

24 disabled under the Act.

25 **III.    Scope of Review**

26      Congress has provided a limited scope of judicial review of the Commissioner's decision

27 to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

28 a court must determine whether substantial evidence supports the Commissioner's decision.  42

1 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*,

2 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d

3 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept

4 as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must

5 be considered, weighing both the evidence that supports and the evidence that detracts from the

6 Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

7      In weighing the evidence and making findings, the Commissioner must apply the proper

8 legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court

9 must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the

10 proper legal standards, and if the ALJ's findings are supported by substantial evidence.  *See*

11 *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).   "Where

12 the evidence as a whole can support either outcome, we may not substitute our judgment for the

13 ALJ's." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

14 **IV.     Discussion**

15      Plaintiff's sole claim on appeal is that the ALJ erred in applying Medical-Vocational Rules

16 202.11 and 202.18.  Rule 202 (20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202) addresses claimants

17 whose maximum sustained work capacity is limited to light work as a result of a severe medically

18 determinable impairment.  Rule 202.11  (20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.11) provides

19 that persons closely approaching advanced age (50 to 54 years old), who are limited to light work,

20 have limited or less education, whose prior work was skilled or semi-skilled, and whose skills are

21 not transferable, are not disabled.  Rule 202.18  (20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.18)

22 provides that younger individuals (18 to 49 years old), who are limited to light work, have limited

23 or less education, whose prior work was skilled or semi-skilled, and whose skills are not

24 transferable, are not disabled.

25      The ALJ found that, although Plaintiff was a younger individual aged 18 to 49 on the

26 alleged disability onset date, by the date of the hearing decision, he had reached the category of

27 closely approaching advanced age (50 to 54 years).  Because Plaintiff could not communicate in

28 English, the ALJ considered him to be a person illiterate in English.  Citing SSR 82-31 and 20

1    C.F.R. Pt. 404, Subpt. P., App. 2, Rules 202.11 and 202.18, the ALJ disregarded the absence of

2    transferable job skills, since Rules 202.12 and 202.19, which address the same claimants *with*

3    transferable skills would produce that same result: that Plaintiff was not disabled.  Because

4    Plaintiff was not able to perform the full range of light jobs, however, the ALJ proceeded to

5    Chaparro's testimony that jobs that Plaintiff was capable of performing existed in significant

6    numbers.  He then concluded that Plaintiff was not disabled.

7         Plaintiff contends that Rules 202.11 and 202.18 do not properly apply to an individual who

8    is illiterate (in that he cannot communicate in English) and who previously worked in a semi-

9    skilled position.  Relying on *Silviera v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000), Plaintiff argues

10   that the ALJ should have applied Rules 202.09 and 202.16, which apply to claimants who are

11   illiterate or unable to communicate in English and whose prior work was unskilled or nonexistent.

12   As Mr. Silviera did, Plaintiff argues that if a non-English-speaking claimant's prior skills are not

13   transferable, his situation is the same as that of a non-English speaker with no skills.

14        Addressing claimants who are illiterate or unable to communicate in English in *Silviera*,

15   the Ninth Circuit held:

16        The grid rules are ambiguous with regard to the treatment of skilled or semi-skilled
          work histories with no transferable skills.  We hold that, as a matter of
17        interpretation, in applying the grid rules the Commissioner must treat a skilled or
          semiskilled work history with no transferable skills as equivalent to an unskilled
18        work history.

19        204 F.3d at 1260.

20        The Ninth Circuit relied, in part, on the Commissioner's own language in 20 C.F.R. §§

21   404.1565(a) and 416.965(a): "If you cannot use your skills in other skilled or semi-skilled work,

22   we will consider  your work background the same as unskilled."  204 F.3d at 1260.  It also noted

23   language in SSR 82-41 which stated:

24        [A] person has no special advantage if he or she is skilled or semiskilled but can
          qualify only for an unskilled job because his or her skills cannot be used to any
25        significant degree in other jobs. *The table rules in Appendix 2 are consistent with
          the provisions regarding skills because the same conclusion is directed for
26        individuals with an unskilled work background and for those with a skilled or
          semiskilled background whose skills are not transferable.*
27
          204 F.3d at 1260, *quoting with added emphasis,* S.S.R. 82-41 at ¶ 2(a).
28

11

1   The Ninth Circuit's unequivocal ruling applies here.  Accordingly, this Court must conclude that

2   the ALJ erred in applying 20 C.F.R. Pt. 404, Subpt. P., App. 2, Rules 202.11 and 202.18, instead

3   of Rules 202.09 and 202.16.

4         Because Plaintiff's age category changed during the pendency of this appeal, his disability

5   status varies according to time.  After Plaintiff's fiftieth birthday on December 16, 2010, Rule

6   202.09 provides that Plaintiff is presumed not to be disabled.  Accordingly, this Court determines

7   that Plaintiff was disabled as of December 16, 2010.

8         For the period from the alleged onset date of July 25, 2008, through December 15, 2010,

9   applying Rule 202.16 results in a presumption that Plaitnff was not disabled.  Since Plaintiff

10  cannot perform the full range of light work, however, the ALJ was required to consider the

11  presumption in light of the vocational expert's testimony.  ALJ Larsen did not here, finding that

12  Chaparro's testimony supported a conclusion that Plaintiff was capable of performing jobs

13  available in significant numbers in the national economy.  The ALJ's determination being

14  supported by substantial evidence in this regard, this Court concludes that Plaintiff was not

15  disabled from July 25, 2008, through December 15, 2010, and is not entitled to disability

16  insurance benefits or SSI for that time period.

17  **V.**     **Conclusion**

18        "The court shall have the power to enter, upon pleadings and transcript of record, a

19  judgment affirming, modifying, or reversing the decision of the Secretary, with or without

20  remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In social security cases, the decision to

21  remand to the Commissioner to award benefits is within the court's discretion.  *McAllister v.*

22  *Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the

23  original administrative proceedings, a social security case should be remanded.  Where, however,

24  a rehearing would simply delay receipt of benefits, reversal and an award of benefits is

25  appropriate."  *Id.* (citation omitted).  If the record is fully developed and further administrative

26  proceedings will serve no useful purpose, a reviewing court should simply reverse and award

27  benefits.  *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1399 (9th Cir. 1988).

28  ///

1    Accordingly, this Court hereby ORDERS that:

2    1.    With regard to the time period from the alleged onset date of July 25, 2008,

3          through December 15, 2010, the administrative determination that Plaintiff

4          Adelaido A. Jacinto is not entitled to disability insurance benefits or

5          supplemental security income be AFFIRMED;

6    2.    With regard to the time period on and after December 16, 2010, the

7          administrative determination that Plaintiff Adelaido A. Jacinto is not

8          entitled to disability insurance benefits or supplemental security income be

9          REVERSED, and the case REMANDED for payment of benefits beginning

10         December 16, 2010; and

11   3.    The Clerk of Court is hereby directed to ENTER JUDGMENT in favor of

12         Defendant Michael J. Astrue, Commissioner of Social Security, and against

13         Plaintiff Adelaido A. Jacinto for the time period from July 25, 2008,

14         through December 15, 2010; and in favor of Plaintiff Adelaido A. Jacinto

15         and against Defendant Michael J. Astrue, Commissioner of Social Security,

16         for the time period beginning December 16, 2010.

17

18   IT IS SO ORDERED.

19   **Dated:    October 9, 2012**                        **/s/ Sandra M. Snyder**
                                                UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28