# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADELAIDO A. JACINTO,<br><br>          Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>          Defendant.<br>_____/ | CASE NO. 1:11-cv-01114-SMS<br><br>ORDER AFFIRMING IN PART AND REVERSING IN PART THE AGENCY'S DENIAL OF BENEFITS AND DIRECTING ENTRY OF JUDGMENT |

Plaintiff Adelaido Jacinto, by his attorneys, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II, and Supplemental Security Income (SSI) under Title XVI, of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following a review of the complete record and applicable law, this Court affirms the Commissioner's decision for the time period from July 25, 2008, through December 15, 2010, and reverses the Commissioner's decision for the time period beginning December 16, 2010.

**I.     Administrative Record**

    **A.     Procedural History**

On January 25, 2006, Plaintiff applied for disability benefits pursuant to Title II of the Social Security Act, alleging disability beginning September 21, 2005. His claims were initially

denied on June 29, 2006, and upon reconsideration, on January 25, 2007. On February 28, 2007, Plaintiff filed a timely request for a hearing. Plaintiff appeared and testified at a hearing on May 13, 2008. On July 24, 2008, Administrative Law Judge Michael J. Haubner denied Plaintiff's application. The Appeals Council denied review on May 24, 2010. On August 10, 2010, Plaintiff filed a complaint seeking District Court review. *Jacinto v. Astrue*, Doc. 1 (E.D.Cal.) (No. 1:10-cv-01475-SMS). The District Court affirmed the Commissioner's decision on October 21, 2011. *Jacinto v. Astrue*, Doc. 16 (E.D.Cal. October 21, 2011) (No. 1:10-cv-01475-SMS).

Meanwhile, on September 3, 2006, Plaintiff again applied for disability benefits pursuant to Title II of the Social Security Act, alleging disability beginning July 25, 2008. On September 15, 2008, he added a claim for Supplemental Security Income (SSI), also alleging disability beginning July 25, 2008. His claims were initially denied on January 14, 2009, and upon reconsideration, on April 20, 2009. On June 1, 2009, Plaintiff filed a timely request for a hearing. Plaintiff appeared and testified at a hearing on October 7, 2010. On October 25, 2010, Administrative Law Judge Christopher Larsen denied Plaintiff's application. The Appeals Council denied review on May 31, 2011. On July 5, 2011, Plaintiff filed a complaint seeking District Court review.

### B. The Agency Record

**Plaintiff's testimony.** Plaintiff (born December 16, 1960) attended school in Mexico through the second grade. He had been a field worker for twenty-five years when he had open heart surgery in 2005. Thereafter, his incision became infected, and he did not return to work. He had knee surgery in 2006 and shoulder surgery in 2010. He was always in pain in his chest, knees, and back. At the hearing, Plaintiff's left arm was supported by a sling following rotator cuff surgery. He walked with a cane.

Plaintiff lived with his wife and his father-in-law. On a typical day, he awoke at about 6:00 a.m. When he was not recovering from shoulder surgery, he was able to perform his own personal care and dress himself. He could fix simple meals. When he was able, he helped with household chores, such as dusting and laundry. Outside, he watered plants or trimmed dry leaves.

///

Plaintiff watched television about three hours a day.  He visited his mother, who lived nearby, once a week.

Plaintiff estimated that he could stand for an hour before needing to sit.  He could sit for twenty or thirty minutes.  He could lift about ten pounds.  Plaintiff was five feet, seven inches tall, and weighted 226 pounds.  (Plaintiff had gained about 25 pounds due to inactivity following his recent shoulder surgery.)

**Wife's testimony.**  Josie Jacinto had been married to Plaintiff for sixteen years.  She testified that now, he was always in pain.  He sometimes became light-headed.  She had been helping Plaintiff dress since he had open heart surgery in 2005.  He became easily frustrated and irritable with himself and others when he attempted to perform household tasks and experienced pain in his back, arms, or knees.  He often volunteered to perform gardening, sweeping, or vacuuming even though his frequent rests meant the task took a long time.  Mrs. Jacinto would prefer that Plaintiff rest and let her perform the household tasks, particularly since she feared that he would become lightheaded, fall, and hurt himself.

**Exertion questionnaire.**  Plaintiff submitted an exertion questionnaire on a form apparently prepared by his attorney.  He reported constant pain, nausea, fatigue, and shortness of breath.  Although he was able to drive his automatic car, he only did so when he wife could not arrange to drive for him.  Although he could sit and water the garden, he could no longer cut or edge the lawn nor prune plants.  His medications included Warfarin (blood thinner), Lipitor (cholesterol), Diovan (blood pressure), aspirin (blood thinner), Gabapentin (pain), Lovaza (cholesterol), Celebrex (pain), fibercon (constipation), Hydrochlorothiazide (taken with Diovan), Lexapro (depression), and Nitroquick (as needed for chest pain).

**Medical records.**  Doctors' reports indicated that Plaintiff's weight ranged from 238 to 267 pounds.

Plaintiff was examined at Bautista Medical Group on August 13, 2007, and August 19, 2008.  (On another occasion, Plaintiff left before seeing the doctor.)  The medical notes documented Plaintiff's complaints of chest pain, knee pain, shoulder pain, low back pain, and high blood pressure.

In September 2008, University Medical Center began to provide follow-up care for Plaintiff's aortic valve replacement. Doctors there also regularly monitored his blood since he was taking anticoagulants. At the initial appointment, Plaintiff complained of fatigue, shortness of breath, and chest pain radiating to his jaw and arm.

Interpretation of an electrocardiogram administered on October 1, 2008, was technically limited by Plaintiff's obesity. Cardiologist Ralph J. Wessel, M.D., concluded:

> The left ventricular chamber size is normal.
> Mild concentric left ventricular hypertrophy is observed.
> There is normal left ventricular systolic function.
> The estimated ejection fraction is 55-60 %.
> The left atrium is mildly dilated.
> The mechanical aortic valve appears well seated with normal function.

AR 217.

Wessel reached the same conclusions following a repeat echocardiogram on June 15, 2010.

A myocardial infusion study, performed November 3, 2008, showed no evidence of a prior infarction or significantly reduced coronary artery perfusion reserve. At 65 percent, the left ventricular ejection fraction was within normal limits. No wall motion abnormality was identified. A stress test performed the same day was negative for both ischemia and angina.

**Dr. Damania's opinion.** On November 4, 2008, internist Rustom F. Damania, M.D., examined Plaintiff as an agency consultant. Plaintiff complained of chest wall pain since his valve replacement, chest pains on two occasions in the past two weeks, pain in the right knee and left shoulder, hypertension, and hyperlipidemia. Plaintiff denied any psychiatric history. He walked with a cane.

The examination was generally unremarkable. Plaintiff's range of motion was within normal limits in all respects except for limited motion in his left shoulder. He displayed slight tenderness of his left shoulder and chest wall. Motor strength was 5/5 in all upper and lower extremities.

Dr. Damania summarized:

> The patient is a 47-year-old male. The patient should be able to lift and carry 20
> pounds occasionally and 10 pounds frequently. The patient should be able to stand

4

and walk six hours out of a normal eight hour workday with appropriate breaks. The patient should be able to sit six hours. There was no objective evidence found to justify the need for an assistive device. No postural limitations to bending stooping, crouching or kneeling. No manipulative limitations, however, he would have difficulty reaching above the level of the left shoulder on the left side. Please correlate with x-rays and MRI's which were done in the past. No relevant visual or communicative impairments.

AR 227.

**Dr. Fast's opinion.**  Agency physician R. Fast, M.D., prepared a residual functional capacity assessment on November 20, 2008. Based on the consultant's examination, Fast opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; could stand or walk about six hours in an eight-hour work day; had limited ability to push and pull with his lower extremities; could occasionally climb, balance, stoop, kneel, crouch, and crawl. He had no visual, communicative, or manipulative limitations. Plaintiff generally could have unlimited exposure to environmental factors except that he should avoid concentrated exposure to hazards such as machinery and heights.

**Dr. Michiel's evaluation.**  On December 27, 2008, psychiatrist Ekram Michiel, M.D., prepared a psychiatric evaluation of Plaintiff. Plaintiff told Michiel that he felt depressed due to pain since his valve replacement surgery. He had no prior psychiatric hospitalization or mental health treatment: his primary care physician prescribed an antidepressant. Dr. Michiel opined:

> Based upon the evaluation and observation throughout the interview, I believe that the claimant is able to maintain attention and concentration and to carry out simple job instructions,
>
> The claimant is able to relate and interact with coworkers, supervisors and the general public.
>
> The claimant is unable to carry out an extensive variety of technical and/or complex instructions.

AR 241.

**Opinion of Dr. Foster-Valdez.**  On January 13, 2009, Jaine Foster-Valdez, M.D., performed the psychiatric review technique. She opined that Plaintiff had an affective disorder, depression, that was not severe. Dr. Foster-Valdez opined that Plaintiff had mild restriction of activities or daily living, and mild difficulties in maintaining concentration, persistence, or pace, but no difficulties maintaining social functioning and no episodes of decompensation. She

5

concluded that Plaintiff's psychiatric allegations were not fully credible and that the evidence as a whole did not support a conclusion that Plaintiff experienced significant work-related limitations as a result of depression.

**Dr. Lee's opinion.** On September 23, 2010, internist Chris Lee opined that, because of neck and shoulder pain resulting from his torn rotator cuff, Plaintiff was unable to perform full time work at any level of exertion and had been unable to do so since 2005. Nonetheless, Lee opined that no limit applied to Plaintiff's ability to sit, stand, or walk at one time. In an eight-hour work day, Plaintiff was able to sit for eight hours and stand or walk for four hours.

**Vocational expert testimony.** Jose Chaparro testified as vocational expert. He characterized Plaintiff's former work as a farm machine operator, which is heavy and semi-skilled with SVP-3. The job was medium work as Plaintiff performed it.

For the first hypothetical question, the ALJ directed Chaparro to assume a worker of Plaintiff's age, education, and work experience, who could perform light physical exertion as defined in the regulations, but could only occasionally climb, balance, stoop, kneel, crouch, and crawl. The worker must avoid concentrated exposure to hazards. He could occasionally reach overhead with his nondominant arm and could occasionally push or pull with his lower extremities. Chaparro opined that the hypothetical worker could not perform Plaintiff's prior job. The worker could perform the work of a household cleaner (DOT 323.687-014; light; unskilled) with 237,000 jobs nationally and 25,000 jobs in California; ham rolling machine operator (DOT 529.685-138; light; unskilled) with 20,000 jobs nationally and 2600 jobs in California; and paper pattern folder (DOT 794.687-034; light; unskilled) with 11,700 jobs nationally and 1600 jobs in California.

For the second hypothetical question, the ALJ directed Chaparro to assume a second worker of Plaintiff's age, education, and work experience, who could stand and walk two hours, and sit three to four hours, in an eight-hour work day, but would require time to lie down and rest for two to three hours per day. Chaparro opined that no jobs would be available for such a worker.

///

Plaintiff's attorney then directed Chaparro to consider the worker in the first hypothetical, but with the ability to occasionally push and pull with his left arm, and who spoke only Spanish. Chaparro opined that such a person could still perform the jobs noted for the individual in the first hypothetical question.

The attorney then directed Chaparro to assume that the person in her prior question also needed take unscheduled breaks throughout the day to elevate his legs. Chaparro opined that no jobs would be available for such a person.

## II.   Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

Step one:   Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two:   Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

///

///

> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

In addition, when an applicant has one or more previous denials of applications for disability benefits, he or she must overcome a presumption of nondisability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). Social Security Acquiescence Ruling ("SSR") 96-4(9), adopting *Chavez*, applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjudicated period. *Lester*, 81 F.3d at 827. The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's residual functional capacity, age, education, or work experience. *Id.* at 827-28; *Chavez*, 844 F.2d at 693.

In the prior action, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 21, 2005. His severe impairments included history of minimally invasive aortic valve replacement, history of right medial and lateral meniscus tear, obesity, and a small tear of the left shoulder rotator cuff. His impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. He was unable to perform any past relevant work. Plaintiff had the residual functional ability to perform a wide range of light work. The ALJ concluded that Plaintiff was not disabled from the alleged onset date to the date of the decision.

The sole issue in Plaintiff's prior appeal to the District Court was whether the ALJ erred in failing to consider a physician's opinion that Plaintiff, who took anti-coagulent medicine, should avoid working in proximity to sharp objects. Finding that the ALJ's determination was reasonable

///

and supported by substantial evidence, the District Court affirmed the Commissioner's denial of disability insurance benefits.

The agency determined that Plaintiff's second application was not subject to *Chavez* due to Plaintiff's allegation of a psychiatric impairment.

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 25, 2008. His severe impairments included status post aortic valve replacement, tears of the medial and lateral menisci of the right knee, left rotator cuff tear status post acriomioplasty and surgical repair, and obesity. His impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff could not perform his past relevant work.

The ALJ determined that Plaintiff had the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently; to stand, walk, or sit for six hours in an eight-hour work day; to occasionally climb, balance, stoop, kneel, crouch, and crawl; to occasionally reach overhead with his non-dominant left arm; and to occasionally push or pull with his lower extremities. He applied the Medical-Vocational Guidelines (commonly known as "the Grids") and found that Plaintiff's age had advanced from that of a younger individual aged 18 to 49 years to that of an individual closely approaching advanced age (50 to 54 years). Because Plaintiff could not communicate in English, the ALJ classified him as illiterate in English. Finally, the ALJ found that transferability of skills was not a relevant consideration since the Grids indicated that Plaintiff was not disabled whether or not he had transferable skills. Because Plaintiff could not perform the full range of light employment, the ALJ relied on the vocational expert's testimony and concluded that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy. Accordingly, he concluded that Plaintiff was not disabled under the Act.

### III.   Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision. 42

U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987). "Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

## IV. Discussion

Plaintiff's sole claim on appeal is that the ALJ erred in applying Medical-Vocational Rules 202.11 and 202.18. Rule 202 (20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202) addresses claimants whose maximum sustained work capacity is limited to light work as a result of a severe medically determinable impairment. Rule 202.11 (20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.11) provides that persons closely approaching advanced age (50 to 54 years old), who are limited to light work, have limited or less education, whose prior work was skilled or semi-skilled, and whose skills are not transferable, are not disabled. Rule 202.18 (20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.18) provides that younger individuals (18 to 49 years old), who are limited to light work, have limited or less education, whose prior work was skilled or semi-skilled, and whose skills are not transferable, are not disabled.

The ALJ found that, although Plaintiff was a younger individual aged 18 to 49 on the alleged disability onset date, by the date of the hearing decision, he had reached the category of closely approaching advanced age (50 to 54 years). Because Plaintiff could not communicate in English, the ALJ considered him to be a person illiterate in English. Citing SSR 82-31 and 20

C.F.R. Pt. 404, Subpt. P., App. 2, Rules 202.11 and 202.18, the ALJ disregarded the absence of transferable job skills, since Rules 202.12 and 202.19, which address the same claimants *with* transferable skills would produce that same result: that Plaintiff was not disabled.  Because Plaintiff was not able to perform the full range of light jobs, however, the ALJ proceeded to Chaparro's testimony that jobs that Plaintiff was capable of performing existed in significant numbers.  He then concluded that Plaintiff was not disabled.

Plaintiff contends that Rules 202.11 and 202.18 do not properly apply to an individual who is illiterate (in that he cannot communicate in English) and who previously worked in a semi-skilled position.  Relying on *Silviera v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000), Plaintiff argues that the ALJ should have applied Rules 202.09 and 202.16, which apply to claimants who are illiterate or unable to communicate in English and whose prior work was unskilled or nonexistent.  As Mr. Silviera did, Plaintiff argues that if a non-English-speaking claimant's prior skills are not transferable, his situation is the same as that of a non-English speaker with no skills.

Addressing claimants who are illiterate or unable to communicate in English in *Silviera*, the Ninth Circuit held:

> The grid rules are ambiguous with regard to the treatment of skilled or semi-skilled work histories with no transferable skills.  We hold that, as a matter of interpretation, in applying the grid rules the Commissioner must treat a skilled or semiskilled work history with no transferable skills as equivalent to an unskilled work history.

204 F.3d at 1260.

The Ninth Circuit relied, in part, on the Commissioner's own language in 20 C.F.R. §§ 404.1565(a) and 416.965(a): "If you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled."  204 F.3d at 1260.  It also noted language in SSR 82-41 which stated:

> [A] person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs.  *The table rules in Appendix 2 are consistent with the provisions regarding skills because the same conclusion is directed for individuals with an unskilled work background and for those with a skilled or semiskilled background whose skills are not transferable.*

204 F.3d at 1260, *quoting with added emphasis,* S.S.R. 82-41 at ¶ 2(a).

11

1    The Ninth Circuit's unequivocal ruling applies here.  Accordingly, this Court must conclude that
2    the ALJ erred in applying 20 C.F.R. Pt. 404, Subpt. P., App. 2, Rules 202.11 and 202.18, instead
3    of Rules 202.09 and 202.16.
4        Because Plaintiff's age category changed during the pendency of this appeal, his disability
5    status varies according to time.  After Plaintiff's fiftieth birthday on December 16, 2010, Rule
6    202.09 provides that Plaintiff is presumed not to be disabled.  Accordingly, this Court determines
7    that Plaintiff was disabled as of December 16, 2010.
8        For the period from the alleged onset date of July 25, 2008, through December 15, 2010,
9    applying Rule 202.16 results in a presumption that Plaitnff was not disabled.  Since Plaintiff
10   cannot perform the full range of light work, however, the ALJ was required to consider the
11   presumption in light of the vocational expert's testimony.  ALJ Larsen did not here, finding that
12   Chaparro's testimony supported a conclusion that Plaintiff was capable of performing jobs
13   available in significant numbers in the national economy.  The ALJ's determination being
14   supported by substantial evidence in this regard, this Court concludes that Plaintiff was not
15   disabled from July 25, 2008, through December 15, 2010, and is not entitled to disability
16   insurance benefits or SSI for that time period.

17   **V.    Conclusion**

18       "The court shall have the power to enter, upon pleadings and transcript of record, a
19   judgment affirming, modifying, or reversing the decision of the Secretary, with or without
20   remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In social security cases, the decision to
21   remand to the Commissioner to award benefits is within the court's discretion.  *McAllister v.*
22   *Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the
23   original administrative proceedings, a social security case should be remanded.  Where, however,
24   a rehearing would simply delay receipt of benefits, reversal and an award of benefits is
25   appropriate."  *Id.* (citation omitted).  If the record is fully developed and further administrative
26   proceedings will serve no useful purpose, a reviewing court should simply reverse and award
27   benefits.  *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1399 (9th Cir. 1988).
28   ///

Accordingly, this Court hereby ORDERS that:

1. With regard to the time period from the alleged onset date of July 25, 2008, through December 15, 2010, the administrative determination that Plaintiff Adelaido A. Jacinto is not entitled to disability insurance benefits or supplemental security income be AFFIRMED;

2. With regard to the time period on and after December 16, 2010, the administrative determination that Plaintiff Adelaido A. Jacinto is not entitled to disability insurance benefits or supplemental security income be REVERSED, and the case REMANDED for payment of benefits beginning December 16, 2010; and

3. The Clerk of Court is hereby directed to ENTER JUDGMENT in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Adelaido A. Jacinto for the time period from July 25, 2008, through December 15, 2010; and in favor of Plaintiff Adelaido A. Jacinto and against Defendant Michael J. Astrue, Commissioner of Social Security, for the time period beginning December 16, 2010.

IT IS SO ORDERED.

**Dated:   October 9, 2012**            /s/ Sandra M. Snyder
                                                 UNITED STATES MAGISTRATE JUDGE